## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

### In Admiralty

Case No.:

GEICO Marine Insurance Company,

        Plaintiff,

vs.

FDC Holdings, Inc. d/b/a Pensacola Shipyard,

        Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, GEICO Marine Insurance Company (hereinafter referred to as "GEICO Marine" or "Plaintiff", hereby sues Defendant, FDC Holdings, Inc., d/b/a Pensacola Shipyard (hereinafter referred to as the "Shipyard" or "Defendant"), for declaratory judgment pursuant to the federal declaratory judgment act, 28 U.S.C. § 2201, and alleges as follows:

1.     This case arises out of claims made by the Shipyard against several GEICO Marine insureds for damage sustained by the Shipyard's marina facilities during Hurricane Sally.

2.     GEICO Marine files this Complaint to obtain a judicial determination and declaration of the rights and obligations of the parties under a series of marine insurance policies issued to boat owners who had their vessels at the Shipyard's marina during Hurricane Sally.

## Jurisdiction and Venue

3.     This is an admiralty and maritime claim within this Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333, because it involves marine insurance policies.

4.     Marine insurance policies of the type involved in this case are maritime contracts subject to this Court's admiralty jurisdiction.

5.     GEICO Marine designates this claim as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

6.      Venue is proper in this district because substantially all the insureds involved are residents of this district, a substantial part of the

events giving rise to the claims occurred within this district and the vessels involved in those claims are in this district.

7.      All conditions precedent to the filing of this action have occurred, been waived, or otherwise satisfied.

8.      There is an actual case and controversy between the parties that is ripe for adjudication.

9.      Specifically, GEICO Marine claims the Shipyard is not covered under the policies issued to its insureds for damage to the Shipyard's property and that GEICO Marine has no duty to defend the Shipyard in the limitation of liability cases filed by the insureds. The Shipyard claims it is covered as an additional insured and that GEICO Marine has a duty to defend it in the limitation of liability cases filed by the insureds.

## The Parties

10.     At all times material to this action, GEICO Marine was an insurance company authorized to transact insurance business in the State of Florida, as well as in other states.

11.     GEICO Marine is a corporation organized and existing under the laws of Nebraska with its principal place of business in Virginia.

12. At all times material to this action, the Shipyard was a corporation organized under the laws of Florida, with its principal place of business in Pensacola, Florida.

**Group A Insureds**

13. At all times material to this action, Germaine Bedard (hereinafter referred to as "Bedard") was the owner of a 1981 32-foot Pearson sailing vessel named *My Girls*.

14. At all times material to this action, GEICO Marine insured Bedard under Policy Number BSP3161933-04.

15. The policy attached to this complaint as **Exhibit "A"** is a true and correct copy of the policy issued to Bedard.

16. The policy issued to Bedard has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

17. At all times material to this action, Gary Bouler (hereinafter referred to as "Bouler") was the owner of a 1986 34-foot Hunter sailing vessel named *Valhalla*.

18. At all times material to this action, GEICO Marine insured Bouler under Policy Number BUS5289529-19.

19. The policy attached to this complaint as **Exhibit "B"** is a true and correct copy of the policy issued to Bouler.

20. The policy issued to Bouler has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

21. The policy issued to Bouler also has a Boat U.S. Yacht Policy Endorsement (form GM042 02 17).

22. At all times material to this action, David Butler and Mary Butler (hereinafter referred to as "Butler") were the owners of a 2004 48-foot Island Packet sailboat named *Betty Ann*.

23. At all times material to this action, GEICO Marine insured Butler under Policy BUS5661964-02.

24. Attached as **Exhibit "C"** is a true and correct copy of the policy issued to Butler.

25. The policy issued to Butler has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

26. The policy issued to Butler also has a Boat U.S. Boat Saver Policy Endorsement (form GM043 11 15).

27. At all times material to this action, Jason Doyle (hereinafter referred to as "Doyle") owned a 1990 32-foot Catalina sailboat named *De Luna Sol*.

28. At all times material to this action, GEICO Marine insured Doyle under Policy BUS5882021-02.

29. Attached as **Exhibit "D"** is a true and correct copy of the policy issued to Doyle.

30. The policy issued to Doyle has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

31. At all times material to this action, Norberto Cuenca Flores, and Miriam Rojas Torres (hereinafter referred to as "Flores") owned a 2001 38-foot Wellcraft Coastal Cruiser named *Rumba*.

32. At all times material to this action, GEICO Marine insured Flores under Policy Number BUS5991855-02.

33. Attached to this complaint as **Exhibit "E"** is a true and correct copy of the policy issued to Flores.

6

34.    The policy issued to Flores has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

35.    At all times material to this action, John Floyd (hereinafter referred to as "Floyd") was the owner of a 2015 45-foot Tiara cruiser named *Captain's Choice*.

36.    At all times material to this action, GEICO Marine insured Floyd under Policy Number BUS6118630-01.

37.    Attached to this complaint as **Exhibit "F"** is a true and accurate copy of the policy issued to Floyd.

38.    The policy issued to Floyd has an Additional Insured Liability Coverage Endorsement (form GM021 04 17) which identifies Sportsman Marina and Dry Dock in Orange Beach, Alabama as an additional insured.

39.    The policy issued to Floyd does not name the Shipyard as an additional insured.

40.    At all times material to this action, Charles Hall, and Michael Roberts (hereinafter referred to as "Hall") owned a 1992 28-foot Catalina sailboat named *Water Wise*.

7

41.    At all times material to this action, GEICO Marine insured Hall under Policy Number BUS5632844-03.

42.    Attached to this complaint as **Exhibit "G"** is a true and accurate copy of the policy issued to Hall.

43.    The policy issued to Hall has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

44.    The policy issued to Hall also has a Boat Storage and Slip Rental Contractual Liability Endorsement (form GM058 07 19).

45.    At all times material to this action, Wayne Howard and Connie Howard (hereinafter referred to as "Howard") owned a 1980 37′ Tartan Yachts sailing vessel named *Impetuous.*

46.    At all times material to this action, GEICO Marine insured Howard under Policy Number BUS5259584-03.

47.    Attached to this complaint as **Exhibit "H"** is a true and accurate copy of the policy issued to Howard.

48.    The policy issued to Howard has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

49.    The policy issued to Howard also has a Boat U.S. Yacht Policy Endorsement (form GM042 02 17).

50.    At all times material to this action, Sigurd Lee (hereinafter referred to as "Lee") owned a 1975 26-foot Columbia sailboat named *Georgia Lee*.

51.    At all times material to this action, GEICO Marine insured Lee under Policy Number BUS5314501-09.

52.    Attached to this complaint as **Exhibit "I"** is a true and accurate copy of the policy issued to Lee.

53.    The policy issued to Lee has an Additional Insured Liability Coverage Endorsement (form GM021 04 17) which identifies the Shipyard as an additional insured.

54.    The policy issued to Lee also has a Boat US Yacht Policy Endorsement (form GM042 02 17).

55.    At all times material to this action, Linda Joyce Matlock, David T. William, and Richard V. Burnes, Jr. (hereinafter referred to as "Matlock") owned a 1984 33-foot Endeavor sailing vessel named *Tranquility Base.*

56.    At all times material to this action, GEICO Marine insured Matlock under Policy Number BUS5554820-03.

57.    The policy attached to this complaint as **Exhibit "J "**is a true and correct copy of the policy issued to Matlock.

58.    The policy issued to Matlock has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

59.    The policy issued to Matlock also has a Boat Storage and Slip Rental Contractual Liability Endorsement (form GM058 07 19).

60.    At all times material to this action, Joel Monteleone (hereinafter referred to as "Monteleone") owned a 1994 30-foot Hunter sailboat named *Where Y'acht Babe*.

61.    At all times material to this action, GEICO Marine insured Monteleone under Policy Number BUS5702635-02.

62.    Attached to this complaint as **Exhibit "K"** is a true and accurate copy of the policy issued to Monteleone.

63.    The policy issued to Monteleone has an Additional Insured Endorsement (form GM021 07 19) which identifies the Shipyard as an additional insured.

64.     At all times material to this action, John Shaddix and Tonda Shaddix (hereinafter referred to as "Shaddix") owned a 2008 35-foot Catalina sailboat named *Arkeoo Traveler*.

65.     At all times material to this action, GEICO Marine insured Shaddix under Policy Number SYP1112131-01.

66.     Attached to this complaint as **Exhibit "L"** is a true and accurate copy of the policy issued to Shaddix.

67.     The policy issued to Shaddix has an Additional Insured Liability Coverage Endorsement (form GM021 04 17) which identifies the Shipyard as an additional insured.

68.     At all times material to this action, Michael Turner and Pamela Caudill (hereinafter referred to as "Turner") owned a 1978 32-foot Lazy Jack sailboat named *Mystic Traveler*.

69.     At all times material to this action, GEICO Marine insured Turner under Policy Number BUS5267058-10.

70.     Attached to this complaint as **Exhibit "M"** is a true and accurate copy of the policy issued to Turner.

11

71.   The policy issued to Turner has an Additional Insured Endorsement (form GM021 04 17) which identifies the Shipyard as an additional insured.

72.   The policy issued to Turner also has a Boat U.S. Yacht Policy Endorsement (form GM042 02 17).

73.   At all times material to this action, Donald Wilson (hereinafter referred to as "Wilson") owned a 1988 42-foot Gozzard sailing vessel named *Chara.*

74.   At all times material to this action, GEICO Marine insured Wilson under Policy Number BUS5221854-04.

75.   Attached to this complaint as **Exhibit "N"** is a true and accurate copy of the policy issued to Wilson.

76.   The policy issued to Wilson has an Additional Insured Endorsement (form GM021 04 17) which identifies the Shipyard as an additional insured.

77.   The policy issued to Wilson also has a Boat U.S. Yacht Policy Endorsement (form GM042 02 17).

## Group B Insureds

78.     At all times material to this action, Walter A. Bell (hereinafter referred to as "Bell") owned a 2004 44′ Tiara motor vessel named *Pipe Dream.*

79.     At all times material to this action, GEICO Marine insured Bell under Policy Number BSP4742581-00.

80.     Attached to this complaint as **Exhibit "O"** is a true and accurate copy of the policy issued to Bell.

81.     The policy issued to Bell has an Additional Insured Endorsement (form GM021 07 19) which identifies Santa Rosa Yacht & Boat Club in Gulf Breeze, Florida as an additional insured.

82.     The policy issued to Bell also has a Boat Storage and Slip Rental Contractual Liability Endorsement (form GM058 07 19).

83.     At all times material to this action, Steven Sawyer (hereinafter referred to as "Sawyer") owned a 1997 36′ Mainship motor vessel named *Pieces of a Dream.*

84.     At all times material to this action, GEICO Marine insured Sawyer under Policy Number BUS6585459-00.

85.     Attached to this complaint as **Exhibit "P"** is a true and accurate copy of the policy issued to sawyer.

13

86.    The policy issued to Sawyer has a Boat Storage and Slip Rental Contractual Liability Endorsement (form GM058 07 19).

### The Facts – All Insureds

87.    Hurricane Sally came ashore just west of Pensacola on September 16, 2020.

88.    When Hurricane Sally struck the Pensacola area, the insureds all had their boats docked at the Shipyard's marina.

89.    As a result of Hurricane Sally, the marina facilities owned by the Shipyard and the vessels docked there sustained substantial damage.

90.    After the hurricane passed, the Shipyard sent letters to the insureds claiming that they were liable for damage to the marina facilities under the terms of a written dockage agreement they were each alleged to have signed.

91.    The written dockage agreements purport to require the insureds to

> "defend and fully indemnify Shipyard and hold it, and its employees and agents, harmless from and against all liability, damages, claims, losses, environmental fines or charges, costs or expenses, including attorney's fees and expenses, arising from any act, omission or negligence of Owner or its officers, contractors, licensees, agents, servants,

14

employees, guests, family members, or others, in or about the vessel, the slip and/or the Marina or adjacent property that is owned by Shipyard, including, but not limited to, personal injury or wrongful death or any environmental damage or environmental contamination or any damage or loss to any of the structures, docks, gangways, fences, doors, locks or other parts of the Marina, … Including damage to Shipyard's property and Shipyard's structures, docks, piers, or other improvements, whether occasioned by Owner's vessel or other property including such damages by Owner's vessel or property during any storm or act of God…."

92.     In addition to sending letters to the insureds, the Shipyard's attorney sent letters to GEICO Marine making claims under the insureds' policies for damage sustained by the marina facilities during Hurricane Sally.

93.     In response to the claims asserted by the Shipyard, all the insureds except for Butler and Floyd have filed petitions for limitation of liability under the Limitation of Liability Act, 46 U.S.C. §§ 30501 et. seq.

94.     Upon receipt of the limitation of liability pleadings for Bedard, Bell, Bouler, Flores, Lee, Matlock, Shaddix, and Wilson, the Shipyard's attorney sent letters to GEICO Marine demanding defense of the limitation actions.

15

95.    The letters are nearly identical and each demands that GEICO Marine "provide a defense of Pensacola Shipyard in this action and protect its right [sic.] and interests."

96.    GEICO Marine expects to receive similar letters demanding defense of the limitation petitions filed on behalf of the other insureds.

## The Limitation of Liability Petitions

97.    Limitation of liability petitions have been filed with this Court on behalf of Bedard, Bell, Bouler, Doyle, Flores, Hall, Howard, Lee, Matlock, Monteleone, Shaddix, Turner and Wilson.

98.    The limitation petition filed on behalf of Bedard has been assigned case number 3:21-cv-00243-TKW-HTC.

99.    The limitation petition filed on behalf of Bell has been assigned case number 3:21-cv-00200-TKW-HTC.

100.    The limitation petition filed on behalf of Bouler has been assigned case number 3:21-cv-00205-TKW-EMT.

101.    The limitation petition filed on behalf of Doyle has been assigned case number 3:21-cv-00176-MCR-HTC.

102.    The limitation petition filed on behalf of Flores has been assigned case number 3:21-cv-00245-MCR-EMT.

16

103.   The limitation petition filed on behalf of Hall has been assigned case number 3:21-cv-00207-MCR-HTC.

104.   The limitation petition filed on behalf of Howard has been assigned case number 3:21-cv-00208-MCR-EMT.

105.   The limitation petition filed on behalf of Lee has been assigned case number 3:21-cv-00203-TKW-EMT.

106.   The limitation petition filed on behalf of Matlock has been assigned case number 3:21-cv-00201-TKW-HTC.

107.   The limitation petition filed on behalf of Monteleone has been assigned case number 3:21-cv-00202-MCR-HTC.

108.   The limitation petition filed on behalf of Shaddix has been assigned case number 3:21-cv-00204-MCR-HTC.

109.   The limitation petition filed on behalf of Turner has been assigned case number 3:21-cv-00206-MCR-EMT.

110.   The limitation petition filed on behalf of Wilson has been assigned case number 3:21-cv-00175-TKW-EMT.

111.   Attached as **Exhibit "Q"** is a copy of the limitation petition filed on behalf of Bedard which contains allegations nearly identical to the allegations in the other limitation petitions.

17

112.   Each petition asks the Court to find the insured was free of fault and, therefore, has no liability for damage to the Shipyard's property.

113.   In the alternative, the petitions allege that damage to the Shipyard's property occurred without the insureds' privity or knowledge entitling them to limit their liability to the post casualty value of their respective vessels.

114.   The limitation of liability petitions do not seek damages for **bodily injury** or **property damage** as those terms are defined in the policies.

115.   The limitation of liability petitions do not seek damages of any type, but rather exoneration from or limitation of liability.

### Policy Provisions – All Insureds

116.   The policies define an insured as follows:

**SECTION IV – COVERAGES**

**BOATING LIABILITY (PROTECTION AND INDEMNITY)**

**A. Who Is an Insured?**

For purposes of **BOATING LIABILITY (PROTECTION AND INDEMNITY)** coverage only, **insured** is defined as:

1. **You;**

2. **Your family member;**

18

    3. Any other person operating an **insured boat** with **your** direct and prior permission and without compensation {; and}

    4. {Any other person operating an **insured boat** with the direct and prior permission of **2.** or **3.** above and without compensation.}[1]

117.   The relevant coverage section of the policies provides as follows:

**B. Coverage Provided**

If an amount is shown for this coverage on the Declarations Page, **we** will pay damages and any costs assessed against an **insured** [up to that amount] for any claim or suit covered under this policy for **bodily injury** or **property damage** {that} [for which] an **insured** becomes legally liable through ownership, maintenance or use of an **insured boat**. **We** will settle or defend, as **we** consider appropriate, any claim or suit covered under this policy that asks for these damages.

118.   The policies define "property damage" as follows:

**SECTION II – DEFINITIONS**

**U. Property damage** means direct physical injury to, or destruction of, tangible property.

---

[1] The various policies include both the March 2016 and the July 2019 versions of the GMPOL001 policy forms. The policy language reproduced in this Complaint is from the July 2019 version. Text appearing in [straight brackets] is only in the 2016 policy language. Text appearing in {curly brackets} is only in the 2019 form.

119.   The policies also contain certain exclusions, namely for damage to property owned by an insured and liability assumed under a contract. The pertinent language of the policies is as follows:

>
> **SECTION IV - COVERAGES**
>
> **C. Exclusions**
>
> [**"We"** do not provide liability coverage for:]
> {Coverage will not apply to:}
>
> [**b.**] {**2.**} Damage to property owned by {an} [any] **insured**;
>
> [**c.**] {**3.**} Liability [which has been] assumed [by an **"insured"**] under a contract or agreement, or any breach of contract.

120.   The Group A policies all contain an additional insured endorsement.

121.   The relevant portion of the April 2017 version of GM021 provides as follows:

>
> Each **"additional insured"** listed below is considered an additional **"insured"** under **SECTION IV - COVERAGES, C. BOATING LIABILITY (PROTECTION AND INDEMNITY)** of the policy.
>
> The **"additional insured"** is subject to all terms and conditions of the policy. In addition, the following conditions apply:

20

> 1) The **"additional insured"** must maintain a General Liability Policy or Marina Keeper's Liability Policy. **"We"** automatically suspend all coverage under this endorsement during any period in which that General Liability Policy or Marina Keeper's Liability Policy lapses or becomes void.

> 5) **"We"** limit this coverage to **BOATING LIABILITY**. There is no coverage for the **"additional insured"** under other sections of the policy. This endorsement does not increase any limit of liability under any coverage section of the policy or any amount shown on the declarations page.

122.   The relevant portion of the July 2019 version of GM021 provides as follows:

> Under **SECTION IV - COVERAGES, BOATING LIABILITY (PROTECTION AND INDEMNITY), A. Who Is an Insured,** the following is added:

> The individual or public or private entity listed above (herein referred to as the "additional insured") is subject to all terms, conditions and exclusions of the policy. In addition, the following exclusions and conditions apply:

> 1. The additional insured must maintain a General Liability Policy or Marina Keeper's Liability Policy. Coverage will not apply during any period that the additional insured's General Liability Policy or Marina Keeper's Liability Policy is not in effect, unless the additional insured is a public entity that chooses to self-insure.

21

3. The coverage provided to the additional insured is limited to indemnification for damages caused by an **insured boat** or related to activity on an **insured boat**. **We** will not provide the additional insured with a separate legal defense against any claim or suit.

123.   The policies issued to Bouler, Butler, Hall, Matlock, Sawyer, Turner and Wilson contain a boat storage endorsement which reads in relevant part:

> **BOAT     STORAGE     AND     SLIP     RENTAL CONTRACTUAL LIABILITY (form GM058 07 19)**
>
> Under **SECTION IV – COVERAGES, BOATING LIABILITY (PROTECTION AND INDEMNITY), C. Exclusions, 3.** is amended as follows:
>
> **3.** Liability which has been assumed by an **insured** under a contract or agreement, or any breach of contract; however, we will cover a **Named Insured** liability for **bodily injury** or **property damage** assumed under a legally enforceable written boat storage or slip rental contract for an **insured boat** provided the **bodily injury** or **property damage** occurs subsequent to the execution of the boat storage or slip rental agreement. Solely for the purposes of liability assumed in a boat storage or slip rental agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than a **Named Insured**, are deemed to be damages because of **bodily injury** or **property damage**, provided:
>
> a. Liability to such party for the cost of defense was assumed in the boat storage or slip rental contract for an **insured boat**; and

b. Such attorney fees and litigation expenses are incurred in the defense of a claim or suit seeking damages that are recoverable under the policy.

All other terms, conditions and agreements of the Marine Insurance Policy remain unchanged.

124.   The policies issued to Howard, Lee and Turner include a Boat U.S.

Yacht Policy endorsement which provides, in part:

Under **SECTION IV – COVERAGES, C. BOATING LIABILITY (PROTECTION AND INDEMNITY), 3.** Exclusions, c. **is removed in its entirety and replaced with:**

c. Liability which has been assumed by an **insured** under a contract or agreement, or a breach of contract with the following provision:

**We** will cover **you** for **your** legal liability for **bodily injury** or **property damage** assumed under a legally enforceable written boat storage or slip rental contract for an **insured boat** subject to the limitations outlined in **C. BOATING LIABILITY, 4. Limit Of Insurance**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of the boat storage or slip rental agreement....

## Count I – Additional Insured Coverage – Group A Insureds

125.   GEICO Marine hereby restates the allegations in paragraphs 1

through 124 and further alleges as follows:

126.   The Shipyard is an **insured** under all the Group A policies identified in this Complaint, except the policy issued to Floyd.

127.   The Shipyard seeks to recover under the policies for damage to property it owns.

128.   The policies exclude coverage for any damage to property owned by the Shipyard.

129.   Additionally, there is no additional insured coverage under the policy issued to Floyd because the Shipyard is not named as an additional insured.

130.   The Boat US Yacht Policy Endorsement (form GM042 02 17), the Boat U.S. Boat Saver Policy Endorsement (form GM043 11 15) and the Boat Storage Slip Rental Contractual Liability Endorsement (form GM058 07 19) do not afford coverage because the exclusion for damage to property owned by the Shipyard still applies.

131.   Damages claimed by the Shipyard for lost profits, consequential or incidental damages fall outside the scope of coverage.

132.   Specifically, loss of profits, consequential or incidental damages do not qualify as **property damage** which is defined in the policies as "direct injury to, or destruction of, tangible property."

24

133.   Accordingly, the Shipyard is not afforded coverage under the GEICO Marine policies for damage to the marina facilities it owns, or for lost profits, consequential or incidental damages.

WHEREFORE, GEICO Marine respectfully requests that this Court enter a declaratory judgment in its favor stating that there is no coverage under the Group A policies for damage to the Shipyard's property, or for loss of profits, consequential or incidental damages.

## Count II – Duty to Defend – All Insureds

134.   GEICO Marine restates the allegations in paragraphs 1 through 124 and further alleges as follows:

135.   The Shipyard has demanded that GEICO Marine provide it a defense to the limitation of liability petitions filed by the insureds.

136.   The duty to defend is determined from the allegations in the complaint or, in this case, the petitions.

137.   None of the petitions seeks damages for **bodily injury** or **property damage** covered by the policies issued to the insureds.

138.   GEICO Marine has no duty to defend the limitation of liability petitions because they do not ask for damages covered under the policies.

25

WHEREFORE, GEICO Marine respectfully requests that the Court enter a declaratory judgment in its favor stating that Plaintiff has no duty to defend the Shipyard in the limitation of liability cases filed on behalf of the insureds, and awarding further relief deemed proper under the circumstances.

Respectfully submitted,

WhiteBird, PLLC
Attorneys for Plaintiff

/s/ Ted L. Shinkle, Esq.
Ted L. Shinkle, Esq.
Florida Bar No.: 608051
730 E. Strawbridge Ave., Ste. 209
Melbourne, FL 32901
Phone: (321) 327-5580
Fax: (321) 327-5565
Email: tshinkle@whitebirdlaw.com
Secondary: jaliano@whitebirdlaw.com